Curia, per

O’Neall, J.
This case was tried before me at Greenville, at the last October court, when sitting in the place of my brother Earle. My conclusion on the circuit has been the subject of review here, and after the able argument which the case has undergone, we are satisfied, for the reasons which are assigned in my report, that the verdict must stand. In addition to what is there said, I will remark that it is true that the undertaking of the sureties does not extend beyond the due administration of the personal estate of the intestate, for to that alone applies the office of the administrator: but yet it may be, that its improper administration may even make them liable for the value ot the real estate. The condition of the bond consists of three parts: — 1st. to make an inventory of the personal estate: 2d. to administer the same accord *231 ing to law: and 3d. to pay over the residue to such persons as may, by law, be entitled to the same. If either of these covenants is broken the sureties are liable, and cannot complain, for their liability arises from the letter of their contract. In the course of an administration according to law, it is the duty of the administrator to pay the debts, so far as the goods, chattels and credits of the deceased extend. If the administrator has assets sufficient to pay the debts, and neglects to do so, and thereby occasions a sale of the real estate at a sacrifice, it is plain that his covenant, to administer according to law, has been broken, and for its breach, he and his sureties are liable for such damages as were sustained on the sale of the land. To this view has been opposed the argument, that the administrator’s liability there could not be fixed but by an action on the case for damages, and that, therefore, the sureties will not be liable, although he might be; inasmuch as neither the Court of Equity or Ordinary could fix the administrator’s liability to account for the value of the land. If the latter part of this position was true, which I shall shew is not, still I should not hesitate to say that the sureties would be liable. It does not hold, universally, that to charge the sureties it is necessary that there should be a decree against the administrator, or an account before the Ordinary or in Equity. So that his liability is fixed, and its quantum ascertained by the judgment of a court of competent jurisdiction, would seem to be all that was necessary to charge the sureties. In a few cases, this may be done by the judgment of a court of law. If the administrator pleads plene administravit, generally, or -prater a given sum, and in the first case a verdict is found for assets, and in the second, judgment is rendered for the sum confessed by the plea, I should entertain no doubt that either of these would be sufficient to charge the sureties. So, too, if in an action of debt on a judgment suggesting a devastavit, a recovery should be had against the administrator, it would be evidence to charge the sureties on the bond. From these illustrations it would seem that wherever the judgment of a law court has been rendered directly upon the administrator’s *232 liability as such, and has fixed its amount, that it would be competent evidence to charge the sureties. Under this rule, if an action on the case was the only remedy against the administrator for negligently or fraudulently permitting the real estate to be sold, I should hold that the judgment at law would be evidence to charge the sureties : for it would conclusively establish the administrator’s liability arising from his mal-administration, and the amount of damages for which he should.respond.
But in equity, the administrator would, beyond all doubt, be liable to account for the value of land thus sold in consequence of such a treach of duty; and if authority be necessary to sustain so plain a proposition, I refer to the case of Hart vs. Ten Eyck, 2 Johns. Ch. R. 62. The liability of the administrator, and the amount of it, might be thus established by the decree of a court to which he is bound to account, and the decree df which is generally conclusive, both against him and his sureties. Other cases of liability for or from the real estate may be put. Generally, whenever the real estate, by operation of law, is changed into personalty, and it comes into the hands of the administrator, to be administered as assets, his sureties would be liable for its faithful administration. For then it becomes a part of the goods, chattels and credits of the deceased. If sold under execution, and a surplus remains, or if sold by the decree of the Court of Equity, and the proceeds directed to be paid to the administrator to be applied in payment of debts, in both or either of these cases, it has ceased to be land, and has become personal assets, which the administrator receives as such, and for which he must accordingly account. For rent of land, cases.may be conceived where the sureties would also be liable. The case of Shelton ads. Cureton, 3 McC. 412, disallowed a charge for rents and profits against the administrators, in a case against the sureties. But in that case the charge arose from the occupancy of the administrators (who were also distributees) of the land of the deceased; and I am not disposed to say that where the administrator is also an heir, that his possession and liability to account for rent should be referred to his character as administrator. It is *233 more properly in his character of co-tenant that he is liable to account for rent; and hence, not arising necessarily from his office of administrator, his sureties would not be liable. But if the administrator, as such, receives the rents, issues and profits of the real estate, it is difficult to perceive any reason why his sureties should not be liable for them. They are no longer the land of the deceased : they have issued from it, it is true, but when they become money, it follows that they are personalty. They then become the goods and chattels of the deceased, which have come to the hands of the administrator to be administered. These illustrations of the liability of the sureties of an administrator for or from the real estate were not necessary for the purposes of this case, but they seemed to be necessary to meet the different views which have been presented in the argument, and to satisfy, if possible, the doubts of the learned counsel for the motion. It is said, in the report, the balance in the hands of the administrator for which the surety is now made responsible, is not from the real estate, but from the personal assets of the deceased. The land was bought by the administrator and administratrix, and paid for out of the personal assets of their intestate. This was, as it turned out, a prudent investment: and, under a wise rule of equity, the profit arising from it cannot enure to their own benefit, but must to that of" their cestui que trusts. So far, there is no contest raised by the counsel for the motion against the propriety of the charge against the surviving administrator, but they have attempted to distinguish between his liability and that of his sureties. But I apprehend there is no distinction. If, as administrator, his liability is properly fixed, they must also be liable. It is where he is improperly charged as administrator that they are not liable. The only question on this part of the case is, whether the sureties are liable for profits over and above legal interest made by an administrator on a prudent investment That they are is, I think, too clear to admit of serious doubt. Interest, for which it is conceded they are liable, is nothing but profits which the law presumes an administrator has, or ought to have, made. It proceeds upon two principles : — 1st. That the use of *234 money is always worth the legal interest; and 2d. that a trustee shall not make any gain or profit to himself from the trust fund. If more than legal interest has been received by the trustee, it would seem that he must either account for it to his cestui que trust, or that he makes profit to himself by the management of the trust. This would defeat a cardinal rule in equity, and cannot, there fore, be allowed. But it is supposed that, because an administrator, if he makes an imprudent investment, and loss follows it, must bear the loss, therefore he ought not to be charged with the extra profits on a prudent investment. The rule which compels him to bear all losses arising from investments made of his own mere motion, and to account for all, profits which may result from them, is one calculated to promote both prudent investments and honest management. There is no legal necessity on administrators to make any investment upon their own mere motion. If they choose, they may loan the money at interest, and this then furnishes the only rule by which they will be charged with profits. If they choose to invest the funds, the court of equity is always open to them, and under its order and advice, they will be protected from personal loss. But if this will protect them from loss, it would also follow, that in an investment made by an order of the court, they could make no personal gain. The effect of a voluntary prudent investment made by an administrator cannot give him any other or greater advantages than he would have had if it had been made by the order of the court of equity. He neither loses or gains by it. Upon the purchase of the land by the administrator and admin-istratrix with the personal estate, a trust resulted to the estate, that it should be held and accounted for as a part of it. It became the representative of that,much of the goods, chattels and credits of the deceased, in the hands of the administrator and administratrix tobe administered: and when sold, its proceeds became also goods, chattels and credits of the deceased to be administered. It appeared to be conceded in the argument, that the surviving administrator was properly charged in the decree with the proceeds of the land. If this be so, how can it be that *235 the sureties are not liable under the bond? They undertake that he shall administer according to law. In what does a legal administration consist? Does it not consist in an entire discharge of all the duties which are required at common law and in equity to be performed by an administrator ? It is clear that it does. In equity the administrator’s duty required him to account for the land which he bought with the personal estate, as personalty, and hence it follows, that the sureties have undertaken for the performance of this duty : and not being performed, that they are liable for the default.
The motion for a nonsuit or new trial is dismissed.
Johnson and Harper., JJ. concurred.
Levy, for Schroter.
Clinton contra.